# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3527/3529

_____

| | |
|---|---|
| Melissa R. Bird, | * |
| | * |
|     Appellee/Cross-Appellant, | * |
| | * |
| v. | *   Appeals from the United |
| | *   States District Court |
| John Chezik Homerun, Inc.; NKC | *   for the Western District |
| Motors, Inc., | *   of Missouri |
| | * |
|     Appellant/Cross-Appellees. | * |

_____

Submitted: June 8, 1998
Filed: August 21, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit
Judges, and PANNER[1], District Judge

_____

OWEN M. PANNER, District Judge.

Defendant John Chezik Homerun, Inc., dba John Chezik Honda ("Chezik"),
appeals from a judgment in favor of plaintiff Melissa Bird ("Bird") on her claim for
common law fraud. The jury awarded Bird $6,900 in actual damages and $35,000 in
punitive damages. Bird cross-appeals the trial court's denial of her motion for a new
trial, or for entry of judgment as a matter of law, on her claim for violation of the

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District
of Oregon, sitting by designation.

Missouri Merchandising Practices Act, Mo.Rev.Stat. §§ 407.010-407.1020 ("Merchandising Practices Act"). The jury found that Chezik had committed multiple violations of the Merchandising Practices Act, but awarded Bird no damages on that claim. Bird also cross-appeals the trial court's refusal to give her proposed instruction on actual damages. We affirm in part and reverse in part.

BACKGROUND

Bird bought a late-model used car from Chezik. Chezik's salesman told Bird that "the only thing wrong with the car is that the pop can holder is broken." The salesman also told Bird that it was a one-owner vehicle which was traded in because the original owner was upgrading to a newer vehicle. None of that was true. Bird subsequently learned that the car not only had multiple prior owners but had been totaled in a head-on collision. A salvage company purchased the wreck and sold it to a dealer, who then patched it up and sold it at a wholesale auction where it was purchased by Chezik.

At trial, Chezik denied any knowledge of the car's tainted past. However, the jury heard testimony that the damage was poorly repaired and would have been readily apparent to an experienced mechanic or car salesman. Chezik's manager, who participated in the sale, had been in the used car business for over two decades and frequently bought cars at the wholesale auction. The car was given a thorough inspection by Chezik's mechanic before being placed on the lot for sale.

Bird paid Chezik $7,671 for the car. She also paid $805 in fees and taxes to title the car, and $ 2,544.94 to finance the car. There was expert testimony that the vehicle would have been worth $8,725 if it had been as represented, but in its true condition was worth only its salvage value of $1,800, a difference of $6,925.

The jury found for Bird on Count I, common law fraud, and awarded actual damages of $6,900 and punitive damages of $35,000. The jury returned a special verdict which specifically found that Chezik "fraudulently misrepresent[ed]" that the

car (a) "was a one-owner vehicle," (b) "had been traded in because its prior owner wanted to upgrade his car," and (c) "had nothing wrong with it except a pop can holder." The jury also found that Chezik "fraudulently conceal[ed] (represent[ed] by silence) that the [car] had sustained prior wreck damage."

On Count II, the jury returned a special verdict which found that Chezik had violated the Merchandising Practices Act by "misrepresenting" that the car (a) "was a one-owner vehicle," (b) "had been traded in because its prior owner wanted to upgrade his car," and (c) "had nothing wrong with it except a pop can holder." The jury also found that Chezik had violated the Merchandising Practices Act by "concealing (representing by silence)" that the car "had sustained prior wreck damage." In addition, the jury found that Chezik had violated the Merchandising Practices Act "with respect to the charging of" a "'title, filing and document fee.'" However, the jury then found that plaintiff had suffered no actual damages as a result of these misrepresentations. The trial court refused to submit the issue of punitive damages to the jury on this count.

Count III alleged breach of express and implied warranties and violation of the Magnuson-Moss Act, 15 U.S.C. § 2310. The jury found for Chezik on this count and Bird has not appealed.

Both sides filed post-trial motions, which the trial court denied in a thorough 78-page opinion.

## CHEZIK'S APPEAL

Chezik's arguments were fully considered and rejected by the trial court, and there is little that we can add to its detailed opinion. The evidence at trial was adequate to support both the jury's verdict in favor of Bird and the award of punitive damages. $35,000 in punitive damages was neither excessive under the circumstances nor disproportionate to the amount of damages sustained. The trial court did not err by admitting evidence of two other instances in which Chezik allegedly sold used cars to

3

consumers without disclosing that the vehicles had been seriously damaged in a wreck. This testimony was admissible to show that the sale to Bird was neither an isolated incident nor inadvertent. Knowledge and intent were elements of the fraud claim and also were relevant to Bird's prayer for punitive damages. The trial court considered whether the incidents were sufficiently similar to be probative of the point for which they were offered, and weighed the probative value of this evidence against the risk of unfair prejudice or confusion. We decline to disturb the trial court's reasoned judgment.

Chezik's final assignment of error is that the trial court should have excluded testimony from the buyers of two other wrecked cars that Chezik sold because those witnesses "were barred from [testifying] by their previous settlement of claims against John Chezik Honda." Brief for Appellant at 8. We disagree. Even assuming that those settlement agreements purported to prohibit the signatories from testifying in another proceeding, those agreements were not binding upon Bird or the trial court, neither of which was a party to those settlement agreements. *See Baker v. General Motors Corp.*, \_\_\_ U.S. \_\_\_, 118 S. Ct. 657 (1998).

## BIRD'S CROSS-APPEAL

On Count I, common law fraud, the jury specifically found that Chezik had made certain misrepresentations and awarded Bird $6,900 in actual damages and $35,000 in punitive damages. On Count II, the Merchandising Practices Act, the jury again found that Chezik had made those same misrepresentations, plus one additional misrepresentation. The jury also found --five different times-- that Chezik violated the Merchandising Practices Act. Nevertheless, when asked to decide the amount of actual damages that Bird sustained as a result of those violations, the jury responded "none."[2]

---

[2] For purposes of this appeal, the principal difference between the two claims is that the Merchandising Practices Act provides for statutory attorney fees, whereas fees are not recoverable on the common law fraud claim.

Bird timely objected to the alleged inconsistency and requested that the jury be sent back to resume its deliberations, thereby preserving this error for appeal. *See Polacco v. Curators of the Univ. of Missouri*, 37 F3d 366, 369 n.2 (8th Cir. 1994). The trial court concluded that the verdicts were not inconsistent. Accordingly, the court denied Bird's request and discharged the jury.

When possible, this court must harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent. *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1347 (8th Cir. 1996). However, we can find no principled basis upon which to reconcile the jury's inconsistent findings. The jury specifically found the same misrepresentations on both counts, the mode of calculating damages was the same, and there is no variation in the essential elements of the two counts that could account for this discrepancy. If the misrepresentations caused $6,900 in actual damages under Count I, then they must have caused that amount of actual damages under Count II which also included one additional misrepresentation. Jury Instruction No. 13, given by the trial court, correctly states that damage to the plaintiff is a required element of a claim for violation of the Merchandising Practices Act. The jury found, five different times, that Chezik violated that Act, yet also purported to find that Bird had sustained no damages.

The only plausible explanation for the jury's failure to award damages on Count II is that the jury had already awarded Bird damages on Count I for essentially the same conduct and did not want to award her the same damages twice.

The jury did find against Bird on Count III, her claims for breach of express and implied warranty and of the Magnuson-Moss Act. However, the jury was instructed that it could not find for Bird on this claim unless the jury found that she had timely given Chezik notice of the defects. There was testimony that she had not. Accordingly, the adverse finding on Count III does not alter our conclusions regarding Counts I and II.

5

We remand to the district court with instructions to enter judgment as a matter of law for the plaintiff on Count II, with the amount of actual damages on that count being the same as for Count I.

Bird also assigns error to the jury instruction on actual damages, which the trial court limited to the difference between the fair market value of the vehicle if it had been as represented versus the vehicle's actual value. In *Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F3d 565 (8th Cir 1998), decided while this appeal was pending, we held under similar circumstances that the buyer "was also entitled to recover other expenses of which there was evidence, including interest charges, repair costs, lost time from work, excessive gasoline costs, towing charges, and other costs relating to 'problems arising from the fraudulent transactions.'" *Id* at 570 (construing Missouri law).

*Grabinski* allows a plaintiff to recover consequential damages, in addition to benefit of the bargain damages, for expenses that are attributable to the fraud. However, *Grabinski* does not permit recovery of expenses that would have been incurred even if the vehicle had been as represented. There was testimony that Bird's vehicle had to be aligned and frequently needed new tires. In theory, Bird could have recovered those costs if the jury found that they resulted from the fraud, but she offered no evidence from which the jury could have fixed those costs. Bird is not entitled to recover the finance charges and taxes she paid to purchase the car, since she would have incurred those costs even if the vehicle had been exactly as represented. Accordingly, any error in the jury instructions was harmless.

## CONCLUSION

We affirm the jury's verdict in favor of Bird on Count I (fraud) and the verdict as to liability on Count II (Merchandising Practices Act). We reverse and remand to

the district court for entry of judgment in Bird's favor on her claim for compensatory damages on Count II, in the same amount as for Count I.

Affirmed.

A true copy.
    Attest:
        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.