# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 99-1630/1632

————

| | | |
|---|---|---|
| James Frazier, | * | |
| | * | Appeal from the United States |
| Cross-Appellant/Appellee, | * | District Court for the Northern |
| | * | District of Iowa. |
| vs. | * | |
| | * | |
| Iowa Beef Processors, Inc., | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |

————

Submitted: December 13, 1999
Filed: January 19, 2000

————

Before WOLLMAN, Chief Judge, McMILLIAN, Circuit Judge, and BATTEY,[1] District Judge.

————

BATTEY, District Judge.


James Frazier (Frazier) sued his former employer, Iowa Beef Processors, Inc. (IBP) alleging a discharge in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. (FMLA). Frazier also alleged retaliatory discharge in violation of public policy under Iowa law. A jury returned a $120,000 verdict on both claims consisting of $80,000 for back pay and $40,000 for emotional distress. Pursuant to IBP's post-

---

[1] The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

trial motion, the trial court[2] granted judgment as a matter of law (JAML) in favor of IBP on the FMLA claim. On the retaliatory discharge verdict, the court affirmed the $40,000 emotional distress award and remitted the back pay award from $80,000 to $69,832.57.

IBP appeals the district court's denial of its motion for JAML on the retaliatory discharge claim. It further appeals the district court's $40,000 award for emotional distress, and the award of prejudgment interest on the back pay. Frazier cross-appeals the dismissal of his FMLA claim and the district court's refusal to submit a punitive damages instruction. We affirm the verdict and remittitur. We dismiss Frazier's cross-appeal.

## FACTS

Because IBP has appealed the denial of its motion for JAML on the state retaliatory discharge verdict, the facts are viewed in the light most favorable to the jury. See Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 496 (8th Cir. 1998).

Frazier was a long-term employee in IBP's pork processing plant. He spent a short time as a supervisor for IBP before returning to an hourly position "on the line." Sometime in November 1994, he began to suffer from pain in his right shoulder. Although he was aware of IBP's policy that work-related injuries were to be immediately reported, he did not initially report his injury. By January 5, 1995, his pain had worsened to a point where he felt he should take some time off from work. Because he feared being stigmatized for having a reportable work-related injury, he again did not report his injury to IBP.

---

[2]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

On January 11, 1995, Frazier went to a medical clinic to have his shoulder examined. The doctor conducting the examination diagnosed a possible rotator cuff injury and prescribed anti-inflammatory medication. Throughout this period, his work absences were recorded as "excused." By January 20, 1995, he realized his shoulder injury was not improving. He called Brad Myers, IBP's workers' compensation manager, to report that he was experiencing shoulder pain due to a work-related injury suffered in November 1994. Myers was upset that Frazier had not reported the work-related injury earlier as required by company policy, since it could result in a workers' compensation claim against the company. Frazier ultimately did file a claim in May 1995.

On February 2, 1995, IBP's personnel director, William LaMarr, terminated Frazier claiming excessive absenteeism. Although IBP denies that LaMarr had any knowledge of Frazier's work-related injury or of his intent to file a workers' compensation claim, this fact-sensitive issue was submitted to the jury which held by its verdict that the reason for Frazier's termination was his report of a work-related injury and intention to file a workers' compensation claim.

## DISCUSSION

### 1. The Retaliatory Discharge Claim

We review de novo the denial of a motion for JAML and affirm the denial if the evidence presented would allow reasonable jurors to differ as to the conclusions that could be drawn. See Ballard v. River Fleets, Inc., 149 F.3d 829, 831 (8th Cir. 1998).

IBP contends that the district court should have granted its motion for JAML on the retaliatory discharge verdict because it believes that Frazier failed to produce sufficient evidence that LaMarr knew of Frazier's work-related injury. To support the

existence of IBP's knowledge of Frazier's work-related injury, the district court correctly pointed to the evidence of phone records and the testimony of Frazier's former wife regarding contacts between them and IBP's management team. Trial Transcript (Tr.) 467-69. The testimony also shows that Myers had expressed displeasure over work-related injuries and that IBP maintained an "unwritten policy" to be hard on those who reported such injuries. Tr. 200, 202. Having reviewed the record, we find sufficient evidence to support the jury's verdict and conclude that the district court properly denied IBP's motion for JAML.

## 2.   Emotional Distress Damages

IBP argues that Frazier failed to produce sufficient evidence of severe emotional harm because he did not establish that he was treated for medical, psychological, or emotional problems following his termination. We disagree.

In the case of <u>Niblo v. Parr Manufacturing, Inc.</u>, 445 N.W.2d 351, 355 (Iowa 1989), the Supreme Court of Iowa observed: "We see no logical reason to require a plaintiff to prove that the emotional distress was severe when the tort is retaliatory discharge in violation of public policy." In addition, it is well settled that awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms. <u>See, e.g.</u>, <u>Jenkins v. McLean Hotels, Inc.</u>, 859 F.2d 598, 600 (8th Cir. 1988); <u>Morrissey v. Welsh Co.</u>, 821 F.2d 1294, 1299 n.3 (8th Cir. 1987); <u>Stafford v. Neurological Medicine, Inc.</u>, 811 F.2d 470, 475 (8th Cir. 1987); <u>Vanskike v. Union Pac. R.R.</u>, 725 F.2d 1146, 1150 (8th Cir. 1984).

At trial both Frazier and his ex-wife, Joyce Taylor, testified regarding the emotional havoc Frazier suffered as a result of his termination. Frazier testified that he had always been gainfully employed and that he felt all of his dignity and self esteem were taken away when he was improperly terminated. Tr. 280-82. He also stated that

he felt empty and lost. Tr. 281. To deal with these feelings, he frequently went to bible study group and spent extra time alone. Tr. 282. Taylor testified that Frazier appeared to be a "broken man" and that his spirit was broken. Tr. 469. While the $40,000 verdict appears to be generous, we do not feel that it was excessive.

**3.     Back Pay Damages**

IBP contends that the district court erred in failing to properly instruct the jury on the defense of mitigation of damages and as a result the jury improperly awarded Frazier $80,000 in back pay — subsequently remitted by the district court to $69,832.57.

A district court's refusal to give a proposed jury instruction is reviewed for an abuse of discretion. See Cox, 163 F.3d at 496. On appeal, this Court must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issue of mitigation to the jury. See Martin v. Wal-Mart Stores, Inc., 183 F.3d 770, 773 (8th Cir. 1999). Even if an error occurred, we reverse only if the error affected the substantial rights of the parties. See id.

In this case, the district court submitted the following instruction on mitigation of damages:

> Jury Instruction No. 5, Damages
> You are instructed that the plaintiff has a duty under the law to "mitigate" his damages – that is, to exercise reasonable diligence under the circumstances to minimize his damages. Therefore, if you find by the preponderance of the evidence that the plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him, you must reduce his damages by the amount he reasonably could have avoided if he had sought out or taken advantage of such an opportunity.

This instruction adequately submitted the issue of mitigation to the jury.

**4.     Prejudgment Interest**

IBP argues that the lower court abused its discretion in granting Frazier prejudgment interest on his back pay award because the lost income occurred at various times during Frazier's discharge and thus each pay day would have a different interest associated with it.

A decision granting prejudgment interest is reviewed on appeal under the abuse of discretion standard. See Val-U Constr. Co. of South Dakota v. Rosebud Sioux Tribe, 146 F.3d 573, 582 (8th Cir. 1998); Smith v. World Ins. Co., 38 F.3d 1456, 1467 (8th Cir. 1994). Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986) provides that:

> [a]s a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due.

Generally, prejudgment interest should be awarded "unless exceptional or unusual circumstances exist making the award of interest inequitable." Id. (citations omitted). IBP fails to cite to an authority in support of its position that prejudgment interest cannot be awarded on back pay awards. Accordingly, the district court's award of prejudgment interest as computed under Iowa Code § 535.3 and postjudgment interest as computed pursuant to 28 U.S.C. § 1961 was not an abuse of discretion.

## 5. The FMLA Claim

On cross-appeal, Frazier argues that the district court should not have granted IBP's motion for JAML as to his claim under the FMLA. The FMLA provides in pertinent part:

> [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(D). The district court granted IBP's motion for JAML, concluding that Frazier had failed to provide any medical evidence to establish that he was suffering from a serious health condition because he did not show that he was incapacitated for the requisite three-day period required by the FMLA. Furthermore, the district court found the record to be devoid of evidence that Frazier received any "continuing treatment" for his injury.

We review the district court's granting of a JAML de novo. See Bailey v. Runyon, 167 F.3d at 468. "[B]ecause the law places a high standard on overturning a jury verdict, JAML is proper '[o]nly when there is a complete absence of probative facts to support the conclusions reached' so that no reasonable juror could have found for the nonmoving party." Id. (citing Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997) (internal citations omitted)). Hence, we will affirm the grant of JAML only "when all the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict." Id. (internal citations omitted).

A "serious health condition" under the statute is defined by a period of incapacity of more than three consecutive days together with continuing subsequent treatment by a health care provider. See 29 C.F.R. § 825.114. "Incapacity" is further defined as an "inability to work, attend school or perform other daily activities . . . ." 29 C.F.R. § 825.114(a)(2)(i). Finally, the injury or illness must require continuing

treatment by a health care provider. See 29 C.F.R. § 825.114(a)(2); see also Thorson v. Gemini, Inc., 123 F.3d 1140, 1141 (8th Cir. 1997) (observing that a "serious health condition" also requires continuing medical treatment). Where an employee has not shown his absences to be a result of a serious health condition, he is not protected by the FMLA. See Bailey v. Amsted Indus., Inc., 172 F.3d 1041, 1044-45 (8th Cir. 1999) (holding that employee was not protected under the FMLA where absence was not attributable to a serious health condition).

At trial Frazier testified that he originally believed his shoulder injury would recover on its own with rest. Tr. 234. When the injury did not improve within a few days, Frazier decided to visit a doctor. Id. On January 11, 1995, Frazier went to Mercy Care, a local medical clinic, and was examined by Dr. Andrew Patterson. Tr. 236. Dr. Patterson advised Frazier that he was suffering from a possible rotator cuff problem. Tr. 238. Frazier informed Dr. Patterson that he would be returning to work the next day and would see a plant physician. Appendix (App.) at 246. In response, Dr. Patterson did not advise Frazier that he could not return to work nor did he provide Frazier with any work-related restrictions. Id. Despite informing Dr. Patterson of his intent to return to work and see a plant physician, Frazier did not return to work.

On January 20, 1995, the record reveals that Frazier contacted Mercy Care again and received a referral to orthopedic surgeon James Pape. Tr. 239-40. Frazier was examined by Dr. Pape on January 25, 1995, and was diagnosed with a right shoulder impingement. App. at 253. Dr. Pape recommended anti-inflammatory medication and noted that Frazier would benefit from strengthening exercises. Id. Frazier was not advised by Dr. Pape to stay off work, nor was he given any light duty restrictions. Subsequently, Frazier failed to attend any of his follow-up appointments with Dr. Pape, though his appointments were rescheduled. Frazier sought no further treatment for his shoulder injury until June 7, 1995. See id.

While the evidence indicates that Frazier was suffering from an impingement to his right shoulder in January 1995, it does not show that Frazier's injury was considered by either doctor to be a "serious health condition" resulting in an inability to perform work. See 29 C.F.R. § 825.114(a)(2)(i). As the district court correctly observed, Frazier's medical records were completely devoid of any evidence that he was instructed by either doctor that his shoulder injury was of such severity as to make him unable to perform his job. Because an inability to perform one's job is a requisite element of a FMLA claim, the district court properly granted JAML in IBP's favor. See id.; see also Thorson, 123 F.3d at 1141. In addition, the district court also correctly observed that Frazier had failed to provide any evidence tending to show that he received "continuing treatment" by a health care provider. Though he visited two doctors for his injuries for purposes of diagnosis, neither visit resulted in a program of treatment, prescribed medication, or a course of physical therapy. In fact, Frazier failed to return for his scheduled follow-up visits with Dr. Pape. Because a showing of "continuing treatment" is also needed to establish a "serious health condition," the district court properly concluded that Frazier had failed to present any evidence in support of the FMLA verdict.

6.    **Punitive Damages**

Frazier also argues on cross-appeal that he presented sufficient evidence at trial of IBP's willful and wanton disregard of his rights such that an instruction on punitive damages should have been presented to the jury. We disagree.

Punitive damages can be awarded if the conduct from which the claim arose constituted willful and wanton disregard for the rights or safety of another. See Iowa Code § 668A.1(1)(a). The intentional acts of the defendant must be of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable harm would follow. See Norwest Bank Iowa N.A. v. Lockard, Nos. 9-400, 98-1019, 1999 WL 975755, at *3 (Iowa App. October 27, 1999); see also Fell v.

Kewanee Farm Equip. Co., 457 N.W.2d 911, 919 (Iowa 1990). To require an instruction on punitive damages, Frazier must have provided sufficient evidence of egregious conduct on the part of IBP. See Schultz v. Security Nat'l Bank, 583 N.W.2d 886, 888 (Iowa 1998); Ezzone v. Riccardi, 525 N.W.2d 388, 398 (Iowa 1994). In this case, the district court properly refused to submit an instruction on punitive damages because the evidence presented by Frazier at trial simply did not rise to the level of egregious conduct required under Iowa law.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.