**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-40639
Summary Calendar

SONYA SOSA,

Plaintiff-Appellant,

VERSUS

COASTAL CORP; COASTAL MART INC; COASTAL MARKETS LTD,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(V-00-CV-17)

December 16, 2002

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Sonya Sosa appeals the district court's grant of summary judgment to her former employer, Coastal Markets, Ltd., and two related entities, Coastal Mart, Inc. and Coastal Corporation

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

(collectively "Coastal"), dismissing her claim that Coastal discharged her for attempting to use the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. We AFFIRM.

## I.

Coastal operates a chain of convenience stores. Sosa began working at Coastal store number 3343 in Victoria, Texas, in October 1998. She received several bonuses in 1999. In September 1999, Margie Androsky, Coastal's area sales manager, promoted her to the position of manager of Coastal store number 3342.

On November 9, 1999, Sosa injured her knee on the job. On November 12, 1999, a tumor was discovered in her right femur. She continued to work despite her medical problems. On December 14, 1999, one of Sosa's treating physicians recommended she seek evaluation and treatment at the MD Anderson Cancer Treatment Center in Houston, Texas. When Sosa made the appointment, she was advised that she might need to stay up to five days for treatment if the tumor proved to be cancerous. Sosa testified by affidavit that "her supervisors were aware that [her] scheduled treatment at MD Anderson would require [her] to be a way [sic] from work for up to five days and they had planned accordingly by scheduling another manager to work in [her] place."

Sosa's last day of work was on December 26, 1999. The next day, she traveled to Houston for her appointment. In Houston, she learned that the tumor was not cancerous. She testified that she

"was advised by [her] treating physician, Dr. Weber, that if [her] leg was still hurting, to stay off it and rest the leg for three days." Sosa returned home the same day, December 27, 1999.

On December 28, 1999, Androsky learned of Sosa's diagnosis. She telephoned Sosa to inform her that her replacement could not work for her the next day, December 29, 1999. Androsky told Sosa she would need to "open" the store.[1] Sosa replied that she could not work because she was in pain and had another doctor's appointment on December 29, 1999. At her deposition, Sosa said that Androsky then "told [her she] needed to find [her] assistant to come in if [she] couldn't." Sosa responded by saying she "was out on a medical leave, and that it was [Androsky's] responsibility to take care of it." The women's conversation deteriorated into a shouting match, and one or the other hung up. Sosa admits she spoke to her assistant manager on the evening of December 28, 1999, after her conversation with Androsky but did not ask her to open the store the next morning.

On December 29, 1999, no one opened store number 3342. Sosa called Androsky at about 7:30 a.m. to ask why no one had opened the store. Androsky then called her superiors, from whom she received permission to fire Sosa. In the meantime, Sosa went to the store and began the opening process. Androsky then went to the store and

---

[1] Because the convenience stores are open twenty-four hours a day, opening the store involves daily paperwork and deposits. Opening takes place about 6:00 a.m. each day.

discharged Sosa.

After her discharge, Sosa requested an internal investigation. The investigation found no cause to reverse the termination decision. Sosa then filed this lawsuit, alleging Coastal discharged her for attempting to use FMLA leave and for interfering with her rights under the FMLA. She also stated a claim under the Consolidated Omnibus Reconciliation Act, 29 U.S.C. § 1161 *et seq.*, as well as state law claims. Coastal and Sosa filed opposing motions for summary judgment. The district court granted Coastal's motion but denied Sosa's. Sosa now appeals the FMLA portion of the district court's decision.

II.

We review a grant of summary judgment de novo. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 318 (5th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. at 318-19. In assessing the summary judgment evidence, we must review all the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and make no credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.

4

Under the FMLA, an eligible employee is entitled to a total of twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employer must restore the employee to the same position or a comparable position. 29 U.S.C. § 2614(a)(1).

When direct evidence is lacking, the familiar *McDonnell-Douglas* burden-shifting framework applies to a claim that an employee was penalized for exercising rights guaranteed by the FMLA:

> The three-part burden-shifting scheme places the onus on the plaintiff alleging retaliatory discharge to establish a prima facie case of discrimination by demonstrating that: (1) she engaged in a protected activity; (2) the employer discharged her; and (3) there is a causal connection between the protected activity and the discharge. Once the plaintiff makes this preliminary showing, the employer must articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted. To defeat summary judgment, the plaintiff must produce substantial probative evidence that the proffered reason was not the true reason for the employment decision and that the real reason was the plaintiff's participation in the protected activity.

*Chaffin*, 179 F.3d at 319-20.

The parties discuss only Sosa's ability to show the first element of the required prima facie case. To satisfy the first element, Sosa must show that she suffered from a serious health condition that made her unable to perform the functions of her

5

position.  *See* 29 U.S.C. § 2612(a)(1)(D); *see also Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1195 (8th Cir. 2000) (holding that "an inablity to perform one's job is a requisite element of a FMLA claim").  The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11), *cited in Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999).  The "incapacity" part of the requirement is explained in regulations promulgated by the Department of Labor:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves: . . . (2) Continuing treatment by a health care provider.  A serious health condition involving continuing treatment by a health care provider includes . . . : (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  A chronic serious health condition is one which: (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider; (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (C) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(iii).  Hence, an employee is protected by the FMLA for any period of incapacity or treatment for such incapacity due to a chronic serious health condition.

There is no serious question that Sosa had a tumor in her leg.  Rather, the question is whether Sosa was incapacitated on the morning of December 29, 1999, when she was discharged.  To this

6

end, Sosa offers as evidence that she was incapacitated or otherwise unable to work her testimony that she was in pain; that Dr. Weber had advised her to stay off her leg if it was hurting; and that she had a doctor's appointment some time on December 29, 1999.

Sosa's statement that she could not work because she was in pain is incompetent summary judgment evidence because it is unsubstantiated and conclusory. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Likewise, Sosa's report of Dr. Weber's order to stay off her leg is inadmissible hearsay. *See Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 698 (5th Cir. 1997). This leaves only Sosa's evidence of her doctor's appointment on December 29, 1999. It is not clear from the record exactly when the doctor's appointment was scheduled. Sosa states she attended the appointment after she was discharged, which suggests the appointment was later in the day. Still, drawing the inferences in Sosa's favor, there is an issue of fact as to whether Sosa's appointment on December 29, 1999, prevented her from opening the store that morning.

In its brief, Coastal states that it terminated Sosa because of insubordination—she failed to comply with Androsky's order that she either open the store herself on December 29, 1999, or arrange for the assistant manager to open the store. Assuming Sosa was incapacitated on December 29, 1999, due to a doctor's appointment,

Coastal could not terminate her for failing to open the store herself. But Sosa's incapacity on December 29, 1999, did not prevent her from calling her assistant the day before to instruct her to open the store. Her refusal to call her assistant was insubordination, which is a legitimate nondiscriminatory reason for termination. *See Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action."). Hence, Coastal has offered a legitimate nondiscriminatory reason for its action.

Sosa has offered no evidence showing Coastal's insubordination explanation was false, let alone pretextual. Sosa rightly argues that Coastal could not base its decision on her failure to report for work as long as she made out a prima facie case of FMLA coverage. But this argument does not extend to her failure to instruct her assistant manager to open the store in her place. She does not deny that Androsky ordered her in the alternative to arrange for the assistant manager to open the store on December 29, 1999.[2]

IV.

Because Sosa has failed to demonstrate Coastal's reason for

---

[2] Given our disposition of this case, we need not address Sosa's additional arguments about whether expert medical evidence was required to prove her serious medical condition or whether Coastal was obligated either to honor her request for FMLA leave or to implement the statutory procedures for determining whether the leave was warranted.

8

her termination was pretextual, the district court did not err in granting summary judgment to Coastal and dismissing her claims.  We therefore AFFIRM.