# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2610

_____

Todd Borchardt; Michele Borchardt; Danielle Shaver

*Plaintiffs - Appellants*

Dillon Borchardt

*Plaintiff*

v.

State Farm Fire and Casualty Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 11, 2019
Filed: July 29, 2019

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A fire destroyed Todd and Michele Borchardt's home located in Byron, Minnesota. A jury determined the fire was intentionally set, although not by Todd,

Michelle, or Danielle Shaver, the Borchardts' daughter. Additionally, the jury found that Todd, Michele, and Danielle (collectively, "the Borchardts") each willfully, and with intent to defraud, concealed or misrepresented a material fact or circumstance relating to the fire or the insurance claim submitted to State Farm Fire and Casualty Company ("State Farm"). The district court[1] entered judgment awarding no damages to the Borchardts and awarding $9,927.50 in damages to Dillon Borchardt for his insurance claim. The Borchardts argue on appeal that State Farm failed to prove they made a material misrepresentation to State Farm and thus the district court erred in denying their motion for judgment as a matter of law. We affirm.

## I.    Background

In March 2006, Todd and Michele Borchardt purchased a house in Byron, Minnesota, for $254,000.00 with the financial assistance of Todd's parents. Although the house was purchased without a loan, the Borchardts borrowed $54,000.00 from a bank to finish the basement and make it handicap accessible. Their monthly mortgage payment was $254.00. Michele testified that during her entire relationship with Todd, approximately 25 years, they experienced financial difficulties. At times, they borrowed money from other people to pay bills and other times would "finagle things to pay them."

In September of 2014, the Borchardts' children, Danielle (aged 23) and Dillon (aged 16), and Danielle's boyfriend, Jeff Lawson, resided in the home with Todd and Michele. When the house had previously been in foreclosure proceedings, the Borchardts borrowed money from others or withdrew money from a retirement account to clear the default. Beginning in 2010, the Borchardts tried to sell the home, both on their own and with the help of real estate agents. No offer to purchase was

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

ever conveyed to the Borchardts. In July 2013, Todd lost his job as a custodian at Mayo Clinic, a job he had held for 12 years. Michele was unable to perform her duties as an assistant head cook after undergoing surgery in December 2013. While Todd was able to find work through a temporary service mowing lawns, by September 2014 Todd and Michele were behind on all of their bills and no longer had any savings or retirement accounts. They last made a mortgage payment in April 2014.

On Monday, September 8, 2014, the electricity to the Borchardts' home was disconnected for nonpayment. The Borchardts made plans to camp for the weekend because the campground had hot showers. Their weekend plans changed to renting a local hotel room when it was cold and rainy on Friday morning. Around dinnertime on Friday, September 12, 2014, Todd, Michele, Dillon, Danielle, Danielle's boyfriend, and the family dogs left the home, drove to Taco Bell to eat, and then drove to the hotel for the night.

Sometime between midnight and 1:00 a.m. on Saturday, September 13, 2014, the Olmsted County (Rochester) Sheriff's Department called Danielle's phone. Michele answered. The deputy told Michele that the house was on fire. Michele and Todd immediately left the hotel and drove to the house to find it engulfed in flames. Michele and Todd were on scene for about an hour and then returned to the hotel when it became too emotionally difficult for Michele to watch the fire.

As part of its investigation, State Farm retained Doug Noah, a fire investigator, to assist in determining the cause of the fire. Noah opined that the fire was incendiary in origin, the most probable cause arising from application of an open flame to combustible materials. State Farm also discovered that approximately two years before the fire, the Borchardts had no insurance on the house. The Borchardts subsequently purchased a homeowners policy from State Farm. They received a cancellation notice in January 2014 for nonpayment. The policy lapsed on March 6,

2014, when the Borchardts did not make the required payment. In the spring of 2014 when the Borchardts received their 2013 tax year refund, they bought a new State Farm homeowners policy and paid for the entire year's premium up front. The policy period began on April 28, 2014, and is the policy at issue here.

In a sworn proof of loss statement, the Borchardts made a claim to State Farm for $330,000.00 for the damaged house plus other structures and landscape and a claim for $202,177.13 for damaged personal property. State Farm denied the claim for two reasons:

1. The fire was caused or procured by or at the direction of an insured in violation of the terms and conditions of the State Farm policy, as well as the public policy of the state of Minnesota, all of which render the policy void.

2. There has been concealment and misrepresentation of material facts or circumstances concerning the insurance of the subject thereof, contrary to the State Farm policy and/or Minnesota statutory provisions in the submission of this claim.

The sole issue tried to the jury was liability as to Todd, Michelle, and Danielle's insurance claim. The parties agreed that damages would be decided by the court if the jury returned a verdict in their favor and the parties were unable to agree on the amount. The parties reached a pretrial stipulation on liability and damages as to the value of Dillon's personal items that were destroyed by the fire.

The Borchardts hired Michael Pakkala, a state licensed public insurance adjuster, to assist in preparing an inventory and valuing the items destroyed in the fire. Pakkala testified at trial. Because the Borchardts' home was completely destroyed, Pakkala relied on the Borchardts to provide an inventory of the contents. Pakkala testified that the accuracy of a contents list is impacted when a home is completely destroyed by fire because the homeowners must rely on their recollection

of what was present and valuing is more difficult because often there is no brand or receipt to guide them.

At trial, State Farm identified items on the Borchardts' proof of loss statement that it argued were material misrepresentations. One of those items was Michele's wedding ring. She valued her jewelry in a bankruptcy petition prepared in 2000 or 2001 at $50.00; on the proof of loss statement to State Farm, Michele claimed her wedding ring was worth at $2,000.00. Michele testified at trial that the family owned one non-functioning lawnmower, but the proof of loss statement listed two lawnmowers – one that was 12 years old and one that was 17 years old with no notation that either was non-functioning. The proof of loss statement contained 13 televisions, of which four were flat screens. Michele testified they owned 10 televisions, of which two were flat screens. The Borchardts listed 1,000 DVDs on their loss statement. Dillon testified during a deposition that the family owned an estimated 100 DVDs. While two laptop computers were claimed to have been destroyed, Danielle testified that she only owned one.

On the statement, six food dehydrators were mistakenly listed instead of one six-shelf food dehydrator. Even though Todd had pawned all of his firearms many years earlier, he included on the loss statement a number of accessories for firearms, including ammunition, eight pairs of head sets, a cleaning kit, padded carrying cases, and a hard-sided case. State Farm also argued that the Borchardts' claim for $1,500.00 in food; $500.00 in liquor; and $500.00 in tea and coffee was implausible given the Borchardts' dire financial circumstances, particularly when Michele borrowed $200.00 from her parents to buy milk and food for the family in the summer of 2014. Given the family's financial circumstances, State Farm also questioned the loss of 14 pairs of sunglasses, including multiple pairs of designers sunglasses valued at $135.00, $150.00, and $190.00.

The jury determined that the inaccuracies on the Borchardts' proof of loss statement were enough to establish a willful intent to defraud State Farm by concealment or misrepresentation of a material fact or circumstance relating to the insurance claim. The Borchardts moved for judgment as a matter of law, arguing that no reasonable juror could have found the misrepresentations about their personal property were material. The district court found there was sufficient evidence to allow a reasonable juror to conclude that the Borchardts overstated the value of items lost in the fire by thousands of dollars and thus no expert was required to explain to the jury that fraudulent statements of this magnitude would be material to an insurer. The Borchardts appeal, arguing the jury did not have a legally sufficient basis to return a verdict in State Farm's favor because State Farm presented no evidence on the issue of materiality.

## II. Discussion

We review the denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the jury verdict. Ryan Data Exchange, Ltd. v. Graco, Inc., 913 F.3d 726, 732 (8th Cir. 2019) (citation omitted). Under Minnesota law, an insurer has an affirmative defense to coverage if the insured misrepresents "any material fact with intent to deceive or defraud" the insurer, or if an insured's material misrepresentation increases the insurer's risk of loss. Indep. Sch. Dist. No. 197 v. Accident & Cas. Ins. of Winterthur, 525 N.W.2d 600, 606 (Minn. Ct. App. 1995); Minn. Stat. § 60A.08, subd. 9 (2017). While the insurer bears the burden of proof, the question of whether there has been a material misrepresentation is typically to be resolved by the trier of fact. Id. (citations omitted). A jury need not identify which act amounted to misrepresentation; it is only necessary for the jury to find that an insured "committed *one* act of misrepresentation." RKL Landholdings, LLC v. Seneca Specialty Ins. Co., No. A14-0781, 2015 WL 1959846, at *6 (Minn. Ct. App. May 4, 2015) (emphasis in original). "A misrepresentation increases the risk of loss if it impairs the insurer's ability to

make a reasonable decision to assume the risk of coverage." Schumann v. AMCO Ins. Co., No. C4-02-2150, 2003 WL 21694552, at *3 (Minn. Ct. App. July 22, 2003) (citing Howard v. Aid Ass'n for Lutherans, 272 N.W.2d 910, 912–13 (Minn. 1978)).

The Borchardts argue that being inaccurate on their proof of loss statement does not necessarily equate to being untruthful with an intent to deceive or defraud their insurer. While they concede they made mistakes, they contend materiality is not to be presumed. And, in this case, a type of "bottom-line" rule should apply since their retained adjuster acted favorably to State Farm by applying a flat 30 percent depreciation rate on each item, no matter its age or whether it would be subject to depreciation, and listed items that were not assigned a value. The Borchardts also assert State Farm has not been deceived or defrauded because they remember other items that were destroyed in the fire and never included in the loss statement. In contrast, State Farm advances essentially a type of bright-line rule that the quantity and value of the Borchardts' misrepresentation are *per se* material and void the policy.

The parties' divergent views of the law need not be resolved because the district court carefully and accurately defined the applicable law for the jury. The jury was instructed on the meaning of "material" and "intent to defraud:"

> For a concealment or misrepresentation to be "material," it must be sufficiently substantial to matter to a reasonable insurer. A concealment or misrepresentation that impacts the investigation of an insurer into the cause of a fire is material. Likewise, a concealment or misrepresentation about items of personal property that were allegedly destroyed by a fire is material unless the amount of money involved in the concealment or misrepresentation is so small that a reasonable insurer is not likely to care about it.
>
> To act with an "intent to defraud" means to act with the purpose or intention of deceiving or cheating someone else. In considering

whether any of the Borchardts acted with an intent to defraud, you may consider whether they acted with a desire or purpose to bring about some gain or benefit to themselves at the expense of State Farm.

At the charge conference, there was discussion about how "material" should be defined. The court accepted the Borchardts choice of language. The instruction initially proposed by the court listed a number of synonyms: significant, substantial, important, or pertinent to a reasonable insurer. State Farm argued that only one was necessary. The court agreed. State Farm requested "significant" and the Borchardts wanted "substantial." The court accepted "substantial."

Not only did the Borchardts receive the language in the instruction that they requested, but their own expert witness, Pakkala, testified on cross-examination about the importance of an insured providing accurate information. Pakkala acknowledged the exclusion in insurance policies for lying with the intent to deceive or defraud and agreed that "many insurance companies" take the position that if an insured lies about the existence of an item, the insured does not get paid. Here, the Borchardts admitted at trial to misrepresenting a number of items they claimed were lost in the fire – as examples, they submitted 10 times the number of DVDs that Dillon testified in his deposition were inside the home, they submitted a claim for two flat screen televisions that did not exist, and they submitted a claim for two lawnmowers when they owned only one non-functioning mower. State Farm cast doubt on the plausibility of the Borchardts' claim for $2,500.00 in food, liquor, coffee, and tea. In addition, Michele was unable to explain why she valued her wedding ring at an amount 50 times more than she valued all of her jewelry in a bankruptcy petition filed approximately 13 years earlier. On this record, there was ample evidence for a reasonable jury to find that the Borchardts' misrepresentations were material – that is, they were substantial enough to matter to a reasonable insurer.

Most importantly, it is apparent from the record that the jury did not presume materiality, as argued by the Borchardts. While deliberating, the jury submitted the following question to the court: "Is there a specified amount State Farm considers to be a 'small amount'. ex. % or dollar amount." The court responded: "As Instruction No. 13 explains, State Farm has the burden of proving that any concealment or misrepresentation was 'material' – that is, 'sufficiently substantial to matter to a reasonable insurer.' You must rely on your own recollection of the evidence in deciding whether State Farm carried its burden."

We assume the jury followed the court's instructions, weighed the evidence and credibility of the witnesses, and carefully reached the verdict that it did. Viewing the evidence in a light favorable to the verdict, we conclude that this record contains sufficient evidence to sustain the jury's determination that Todd, Michele, and Danielle made material misrepresentations relating to their insurance claims. Their material misrepresentations regarding the personal property lost in the fire voided their right to recover at all under the policy. Collins v. USAA Prop. & Cas. Ins. Co., 580 N.W.2d 55, 57–58 (Minn. Ct. App. 1998).

## III.   Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____