# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3587
_____

United States of America

*Plaintiff - Appellee*

v.

Clarence Allen Rice

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: September 20, 2012
Filed: November 14, 2012
_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge:

Clarence Allen Rice was convicted of four counts of wire fraud based on fraudulent money transfers he made in connection with his leasing business. The district court[1] sentenced him to 70 months and ordered restitution of $3.3 million. He appeals, challenging the jury instructions, the verdict form, and his sentence. We affirm.

_____

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

## I.

Rice owned several related companies in Des Moines which he operated as one company called C&J. C&J leased golf carts, tanning beds, and other equipment to small businesses for a monthly fee. To finance its operations, C&J regularly sold leases to Frontier Leasing Corporation, which would then receive the stream of monthly payments from the small businesses. C&J remained the named party on the lease, collected the lease payments, and forwarded them to Frontier. C&J would also forward lump sums from lessees who wished to pay off the balance ahead of schedule, and would repurchase leases that went into default.

In June 2000 Rice began using funds from C&J to engage in online day trading, and C&J experienced cash flow problems as a result. To cover C&J's liabilities Rice began to withhold lump sums it received when a lessee paid off its lease early. Instead of forwarding the lump sum to Frontier, Rice would forward an amount equal to the normal monthly payment so that Frontier would not realize the lease had been paid off. Surplus cash would be used to replenish Rice's investment account. In similar fashion Rice made monthly payments on defaulted leases in order to avoid C&J's obligation to repurchase them, and he sold Frontier a number of completely invalid leases that had been canceled, rewritten, or already paid off. He gave inaccurate accountings to Frontier throughout.

In 2006 an internal investigation by Frontier revealed that a large number of monthly payments were actually coming from C&J rather than from lessees, and Frontier began to suspect fraud. When Frontier demanded to have direct contact with the lessees, Rice was forced to admit that hundreds of the leases were in default, paid off, rewritten, or canceled, and that C&J lacked the funds necessary to repurchase them. Nearly 700 of the 2700 leases C&J had sold to Frontier were involved with a total value of approximately $7 million.

Rice was indicted on four counts of wire fraud under 18 U.S.C. § 1343. The indictment alleged that Rice had intentionally devised a scheme to defraud Frontier through several means and that in furtherance of his scheme he had made interstate wire transfers. Each count of the indictment referenced a specific money transfer by wire in which Rice had deposited a lessee's early payoff in C&J's account in Iowa. Count 1 for example identified a transfer of approximately $3,000 by a lessee in North Carolina. Counts 2, 3 and 4 identified similar transfers of lessee payments from Oregon, Virginia, and Florida. The indictment alleged that in each case Rice had converted the payoff money to his own use instead of forwarding it to Frontier. In addition to the conversion of early payoffs, the indictment described several other means in which Rice had carried out his scheme, including concealing defaulted leases, selling invalid leases, and giving inaccurate accountings.

The jury instructions given at trial mirrored the indictment in setting forth the charges and factual allegations against Rice. Instruction 8 identified the wire transfer related to each count, listing the date, location, and amount that was converted by Rice. Instruction 9 described Rice's scheme to defraud Frontier, listing twelve means he had used to carry it out. These included "converting [early payoffs] to his own use," "[c]oncealing the status of defaulted leases," "[s]elling leases to Frontier that were no longer valid," and several others described in the indictment. Instruction 9 explained that the government only needed to prove one of the twelve means in order to establish that Rice had devised a scheme to defraud Frontier and that all the jurors did not need to agree on the same particular means.

The jury found Rice guilty on all four counts. The district court held a two day sentencing hearing where it heard testimony from numerous witnesses and received hundreds of exhibits. The court calculated the total loss from Rice's fraud to be $5.4 million and his guideline sentencing range to be 70 to 87 months. The court subsequently sentenced Rice to 70 months and ordered $3.3 million in restitution.

Rice appeals his conviction and sentence, challenging the jury instructions, verdict form, loss calculation, restitution award, and sentence of imprisonment.

## II.

Rice first appeals the jury instructions given by the district court, arguing that the jury should have been required to agree unanimously on which means he had used to carry out the scheme to defraud Frontier. We review the jury instructions for abuse of discretion. United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004). We will affirm if, "taken as a whole, [they] adequately advise[d] the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Sherer, 653 F.2d 334, 337 (8th Cir. 1981).

Since each use of a wire is a separate violation of the wire fraud statute, 18 U.S.C. § 1343; see United States v. Calvert, 523 F.2d 895, 914 (8th Cir. 1975), there may be multiple violations arising from a single fraudulent scheme. The government must prove each essential element of wire fraud to establish the defendant's guilt: (1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme. United States v. Frank, 354 F.3d 910, 918 (8th Cir. 2004). If the defendant is charged with multiple counts, the government must prove each element with respect to each count.

Here, the indictment charged Rice with four counts of wire fraud. Each count charged Rice with converting a lump sum payoff that should have been forwarded to Frontier but was instead deposited in C&J's bank account. The jury instructions explained that since each count was a separate crime, the elements of wire fraud had to be proven separately with respect to each transfer. The indictment also alleged that among other things Rice concealed defaulted leases, sold invalid leases, and gave inaccurate accountings to Frontier, and the jury instructions explained that those allegations were merely different means by which Rice was alleged to have carried

out the scheme to defraud. The jury was instructed that it did not need to agree specifically on which of those twelve means he had used to defraud Frontier, so long as each juror agreed that he had used at least one of them.

Taking the jury instructions as a whole, we conclude that the jury was "adequately advise[d] . . . of the essential elements of the offenses charged and the burden of proof required of the government." Sherer, 653 F.2d at 337. Instruction 8 correctly set forth the three elements of wire fraud, listed the four counts, and explained that the government needed to prove each element beyond a reasonable doubt. In addition, Instruction 8 identified the wire transfer at issue in each count and reminded the jury that each one was a separate crime for which the government needed to establish all three elements of wire fraud. In order to convict Rice, the jury needed to conclude that with respect to each count Rice intentionally devised a scheme to defraud and used an interstate wire in furtherance of his scheme. This was a clear and proper instruction on the essential elements of the charges and the government's burden of proof.

We also conclude that Instruction 9 was proper, as it stated the correct standard for the jury to use in considering the means Rice used to defraud Frontier. Contrary to Rice's contention, the jury was not required to reach a unanimous decision on which means he had used to defraud Frontier. The general rule is that the jury need not agree on the "underlying brute facts" of a verdict, such as the means the defendant used to commit an element of the crime. Richardson v. United States, 526 U.S. 813, 817 (1999) (citing Schad v. Arizona, 501 U.S. 624, 631–32 (1991) (plurality opinion)). In fraud cases jurors need not agree on "the precise manner in which the scheme violated the law," only the "general thrust" of the scheme. United States v. Blumeyer, 114 F.3d 758, 769 (8th Cir. 1997). Similarly, the First Circuit has recognized that the jury need not agree on each piece of evidence offered to prove the defendant's participation in the fraudulent scheme, United States v. Reeder, 170 F.3d 93, 105 (1st Cir. 1999), and the Ninth Circuit has pointed out that the jury "need not

be unanimous on the particular false promise" made by the defendant, United States v. Lyons, 472 F.3d 1055, 1068 (9th Cir. 2007).

The unanimity language in Instruction 9 was taken directly from the Eighth Circuit model jury instructions for complex fraud cases. See Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 6.18.1341 n.2 (2011). If the government has alleged multiple acts that "set out different ways of committing the offense," the court should instruct the jurors that they need not agree as to the particular act that was done. Id. Here, the court properly instructed the jurors that they needed to agree that one of the means had been used, but that not all needed to agree on the same one. Id.

This case is not similar to Richardson, 526 U.S. at 815, as Rice asserts. There, the defendant was charged with engaging in a continuing criminal enterprise (CCE), defined by statute as a violation of the drug laws that is part of a "continuing series of violations." Id.; see 18 U.S.C. § 848. The Supreme Court ruled that in the CCE context the jury needed to agree unanimously on which of several alleged criminal acts were part of the charged offense since that statute makes each violation in the underlying series an element of the offense. Richardson, 526 U.S. at 815. The situation here is completely different. As we stated above, the elements of wire fraud are simply (1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme. Frank, 354 F.3d at 918. The crimes of which Rice was convicted were separate instances of wire fraud, not separate elements in a complex criminal statute. Accordingly, we conclude that the district court did not abuse its discretion in giving the jury instructions in this case.

Rice also argues that the court should have accepted his proposal for a special verdict form asking the jury to specify which of the twelve means outlined in Instruction 9 the government had proven. We review the denial of a request for a special verdict form for an abuse of discretion. United States v. Pierce, 479 F.3d 546,

551 (8th Cir. 2007). Since we have concluded that the jury was not required to agree unanimously on the particular means Rice used in each fraudulent wire transfer, we also conclude that the district court did not abuse its discretion in denying the request for a special verdict form.

## III.

Rice next argues that the district court erred in its loss calculation and restitution award. He contends that the proper measure of loss was not the loss to Frontier and C&J's customers but his own profit, namely the $1.6 million of C&J funds he had converted to his own use. We review the loss calculation for clear error, United States v. Theimer, 557 F.3d 576, 578 (8th Cir. 2009), and the restitution award for an abuse of discretion, United States v. Schmidt, 675 F.3d 1164, 1167 (8th Cir. 2012).

In fraud cases the court determines the defendant's base offense level using the amount of loss that resulted from the crime. See U.S.S.G. § 2B1.1. Loss "is the greater of actual loss or intended loss," with actual loss defined as the "reasonably foreseeable pecuniary harm that resulted from the offense." Id. cmt. n.3(A). The gain to the defendant may be used as an alternative measure of loss, but only if the actual or intended loss "reasonably cannot be determined." Id. cmt. n.3(B). A "reasonable estimate of the loss" is sufficient. Id. cmt. n.3(C). The district court determined the loss to Frontier by taking the balance in C&J's security deposit account and subtracting the real security deposits and the extra monthly payments C&J had made to Frontier on defaulted or invalid leases. The court determined the loss to C&J's lessees by taking the security deposits Rice had not returned. Adding the two, the court calculated a total loss of $5.4 million. The court deliberately excluded losses from C&J's failure to repurchase defaulted leases from Frontier, explaining that "it is helpful . . . to avoid defaulted lease problems."

We reject Rice's contention that the district court should have used his gain in determining the total loss from his scheme. The defendant's gain is only to be used where the loss "reasonably cannot be determined," U.S.S.G. § 2B1.1 cmt. n.3(B), and we think the court reasonably determined the loss in this case. Accordingly, we conclude that the district court did not clearly err in calculating the loss from Rice's scheme or abuse its discretion in ordering restitution.

IV.

We turn finally to Rice's sentence. He argues that the district court failed to explain its reasons for denying him a downward departure or variance. He contends that he was entitled to a departure or variance because he disclosed that some of the leases were in default, making Frontier aware that lessees' monthly payments were being paid off by C&J. He submits that Frontier allowed the fraud to continue because it was realizing a profit on those accounts, and that this permitted a sentence reduction for wrongful conduct of the victim under U.S.S.G. § 5K2.10.

Rice failed to object to this alleged procedural error at the sentencing hearing, so we review for plain error. See United States v. Phelps, 536 F.3d 862, 865 (8th Cir. 2008). To establish plain error, "the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." Id. Even if the defendant shows plain error, the court "may exercise its discretion to correct a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and internal quotation marks omitted).

We conclude that the district court did not plainly err in sentencing Rice. Contrary to his assertion, the district court expressly considered and rejected the argument that Frontier must have been aware of the entire scheme because he disclosed that some loans were in default. The court explained that it had seen many fraud cases and that it was "not at all unusual once a fraud is discovered to find that

there are a number of indicators that, had someone seen them, it might have disclosed a fraud."  This was a sufficient explanation of the court's decision not to depart or vary downward.  Moreover, Rice failed to show that he was actually eligible for a departure under § 5K2.10, which provides that the victim's wrongful conduct is generally "not . . . relevant in the context of non-violent offenses."

Finally, we do not address Rice's challenge to the substantive reasonableness of his sentence because it was first raised in his reply brief.  Issues not raised in a party's opening brief are waived, see Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004), and where a criminal defendant does not properly raise the issue of substantive reasonableness we do not address it.  See United States v. Brown, 550 F.3d 724, 729 n.4 (8th Cir. 2008).  Moreover, his position lacks merit.

V.

For these reasons, we affirm the judgment of the district court.

_____