# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3707

_____

United States Securities and Exchange Commission

*Plaintiff - Appellee*

v.

Marlon Quan; Acorn Capital Group, LLC; Stewardship Investment Advisors, LLC

*Defendants - Appellants*

Stewardship Credit Arbitrage Fund, LLC; Putnam Green, LLC; Livingston Acres, LLC

*Defendant*s

ACG II, LLC

*Defendant - Appellant*

Florence Quan

*Defendant*

Nigel Chatterjee; DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main; Sovereign Bank; Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; Freestone Low Volatility Qualified Partners, LP

*Intervenor*s

Gary Hansen

*Receiver*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 20, 2015
Filed: March 22, 2016
_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

RILEY, Chief Judge.

Marlon Quan, along with entities he controls, (collectively, Quan, unless context dictates otherwise) appeals a judgment entered on jury verdicts finding securities fraud. Quan challenges the coherence of the verdicts, the accuracy of the jury instructions, and the authority of the district court[1] to order disgorgement. We affirm.

## I.    BACKGROUND

Marlon Quan managed a hedge fund, Stewardship Credit Arbitrage Fund, LLC (SCAF) and its offshore twin, Stewardship Credit Arbitrage Fund, Ltd., through his company Stewardship Investment Advisors, LLC (SIA). The funds invested heavily in loans to PAC Funding, a company controlled by Thomas Petters. The loans were meant to finance Petters's business of buying consumer electronics wholesale and reselling them to retail stores for a profit. The loans were supposedly secured by the goods, accounts receivable, or the stores' promises to pay. Unfortunately, Petters's

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

business was actually a massive Ponzi scheme. Petters used the funds' money to pay off other investors and maintain appearances, while pocketing whatever was left for himself and his family. See generally United States v. Petters, 663 F.3d 375, 379 (8th Cir. 2011). When the scheme collapsed in the fall of 2008, investors in Quan's funds (as well as Quan himself) lost a lot of money.

The U.S. Securities and Exchange Commission (SEC) sued Quan for securities fraud on two basic theories: (1) he made false statements about what he did to protect the funds against fraud and other risks; and (2) he concealed problems with the funds' investments as Petters's scheme began to unravel. The SEC alleged Quan and his companies violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8. The SEC also alleged Quan personally violated Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), and aided and abetted SCAF's violations of Section 10(b) and Rule 10b-5 and SIA's violations of Section 206(4) and Rule 206(4)-8. See also 15 U.S.C. § 78t(e) (aiding-and-abetting liability). The case went to trial and a jury found liability on every count except the alleged violations of Section 17(a)(1) and the allegation Quan personally aided and abetted SCAF's violations of Section 10(b) and Rule 10b-5.

Quan moved for judgment as a matter of law and a new trial. The SEC moved for remedies and a final judgment. The district court denied Quan's motions, entered injunctions against him, and ordered him to disgorge almost $81 million in profits, plus prejudgment interest. We have jurisdiction of Quan's appeal. See 28 U.S.C. § 1291 (appellate jurisdiction); Fed. R. Civ. P. 54(b) (partial final judgments).

## II. DISCUSSION

### A. Verdict Internal Consistency

Quan first argues he is entitled to a new trial because the jury contradicted itself by finding he violated Rule 10b-5 under the Securities Exchange Act, but did not violate Section 17(a)(1) of the Securities Act or aid and abet SCAF in violating Rule 10b-5. Before reaching Quan's argument, we first address a threshold matter.

The district court held Quan could not seek a new trial based on alleged inconsistencies in the verdicts because he did not ask to have the verdicts sent back to the jury before it was discharged. The district court relied on our statement, "If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency *and* move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived."[2] Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992) (emphasis added); accord, e.g., Brode, 966 F.2d at 1239. Quan arguably objected by saying "I will just state for the record that the verdict is internally contradictory" after the district court read the verdicts, cf. Fed. R. Civ. P. 46 ("[A] party need only state the action that it . . . objects to, along with the grounds for the . . . objection."); Smith v. Riceland Foods, Inc., 151 F.3d 813, 821 n.6 (8th Cir. 1998), but indisputably did not move for resubmission.

---

[2]Quan argues this court rejected the district court's approach in Spencer v. Young, in which we wrote "failure 'to object to any asserted inconsistencies *[or to]* move for resubmission of the inconsistent verdict before the jury is discharged' waives the right to a new trial," Spencer v. Young, 495 F.3d 945, 950 (8th Cir. 2007) (alteration in original) (emphasis added) (quoting Brode v. Cohn, 966 F.2d 1237, 1239 (8th Cir. 1992)). According to Quan, the bracketed alteration reflects a deliberate choice to say that either objecting or moving for resubmission is sufficient to preserve the right to a new trial. The language is not as clear as Quan thinks. The altered sentence reasonably could be read to mean the opposite: either a failure to object *or* a failure to make a motion will result in the objection being forfeited and the right to a new trial lost.

We first observe that we have not previously imposed forfeiture in such a situation—where a party pointed out an alleged inconsistency, but did not formally request relief. To the contrary, we appear to have arrived at the formulation requiring both forms of preservation by successively restating general propositions from past cases that did not themselves contain such a requirement. See, e.g., Parrish, 963 F.2d at 207 (citing Lockard v. Mo. Pac. R.R., 894 F.2d 299, 304 (8th Cir. 1990) ("[I]f trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived.")). On the other hand, we also recognize that the purpose of the forfeiture rule in this context "is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury," thereby "prevent[ing] a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." Lockard, 894 F.2d at 304. Though that policy would be partially served by an objection standing alone—which might at least flag a potential issue for the district court—it would be further advanced by requiring the objecting party to specify in a motion how it proposes to solve the problem.

We need not definitively weigh these competing rationales here, because the verdicts in this case are not actually inconsistent. We therefore assume without deciding Quan preserved his argument and proceed to the merits.

Quan could be entitled to a new trial "only if there was 'no principled basis upon which to reconcile the jury's inconsistent findings.'"[3] Top of Iowa Coop., 324

---

[3]Although neither party makes anything of it, we note that the jury's findings were ultimate legal conclusions—for example, "On the SEC's 10b-5 Claim against Marlon Quan . . . we find in FAVOR of [the SEC]"—so the jury decisions appear to be general verdicts, rather than interrogatories or special verdicts as suggested by the verdict form. See Verdict, Black's Law Dictionary 1791 (10th ed. 2014); cf. Fed. R. Civ. P. 49(a)(1) (defining a special verdict as "a special written finding on each issue of fact"). This is noteworthy for two reasons. First, it raises the possibility of

F.3d at 633 (quoting <u>Bird v. John Chezik Homerun, Inc.</u>, 152 F.3d 1014, 1017 (8th Cir. 1998)). The district court has discretion over whether to grant a motion for a new trial, but here the decision turns on a question of law, so we address Quan's two proffered irreconcilable inconsistencies de novo. <u>See</u>, <u>e.g.</u>, <u>Behlmann v. Century Sur. Co.</u>, 794 F.3d 960, 963 (8th Cir. 2015).

### 1. Liability Under Rule 10b-5, but Not Section 17(a)(1)

The jury found Quan did not violate Section 17(a)(1), but did violate Rule 10b-5. Section 17(a)(1) makes it illegal "to employ any device, scheme, or artifice to defraud." 15 U.S.C. § 77q(a)(1). Rule 10b-5 prohibits the same thing in subsection (a), but also prohibits, in subsections (b) and (c), respectively, "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" and "engag[ing] in any act, practice, or course of business

---

viewing Quan's challenge to the consistency of the verdicts as essentially a challenge to the jury instructions that allowed those verdicts. <u>See</u>, <u>e.g.</u>, <u>Jarvis v. Ford Motor Co.</u>, 283 F.3d 33, 56 (2d Cir. 2002) (Sotomayor, J.) ("Objection to an inconsistency between two general verdicts that is traced to an alleged error in the jury instruction or verdict sheet is properly made under Fed. R. Civ. P. 51. Yet to avail itself of relief under this Rule, a party must object before the jury retires to deliberate."). Second, it potentially undermines Quan's premise that inconsistency would entitle him to a new trial, because some courts hold general verdicts reflecting contradictory legal conclusions, unlike special verdicts and interrogatories reflecting confusion or inconsistent factual findings, are not grounds for overturning verdicts in civil cases. <u>See</u>, <u>e.g.</u>, <u>Zhang v. Am. Gem Seafoods, Inc.</u>, 339 F.3d 1020, 1035-36 (9th Cir. 2003) (collecting cases). <u>But</u> <u>see</u> <u>Will v. Comprehensive Accounting Corp.</u>, 776 F.2d 665, 677 & n.5 (7th Cir. 1985). We have not considered that issue in depth, <u>cf.</u> <u>Top of Iowa Coop. v. Schewe</u>, 324 F.3d 627, 631, 633 (8th Cir. 2003) (addressing what appear to be general verdicts and suggesting a new trial would have been required if they were inconsistent), and we need not do so now.

which operates or would operate as a fraud or deceit upon any person."[4]  17 C.F.R. § 240.10b-5.  Quan argues the verdict is inconsistent because the two provisions cover the same things and if he violated one he necessarily violated the other.

But that is not what the district court told the jury.  According to the jury instructions, "A device, scheme or artifice to defraud"—the basis for liability under Section 17(a)(1)—"must involve conduct beyond just misrepresentations or omissions"—the basis for liability under Rule 10b-5(b).  In other words, the bar for finding liability was higher under Section 17(a)(1) than under Rule 10b-5(b).  In light of those instructions, the straightforward inference from the verdicts is that the jury concluded Quan made a false statement or misleading omission, but did not do enough beyond that (at least with scienter) to rise to the level of employing a device, scheme, or artifice to defraud.  Cf. Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1347 (8th Cir. 1996) ("As the unchallenged instructions of the District Court make clear, the two claims have different elements.  In these circumstances, the jury could have found that [the plaintiff] proved all of the elements of [one claim] while failing to prove one of the separate elements of the [other claim].").  This understanding fits aptly with the approach taken at trial, where the parties and the district court treated the different provisions as separate theories of liability based on different facts: (1) false-statement or misleading-omission liability for lying about the funds' safeguards; and (2) fraudulent-scheme liability for hiding problems with the Petters investments.

---

[4]Section 17(a) has two other subsections as well, largely paralleling Rule 10b-5(b) and (c), see 15 U.S.C. § 77q(a)(2), (3), but they are not at issue here.  The verdict form separated the SEC's claims under Section 17(a)(2) and (3) from those under Section 17(a)(1) because only subsection (1) requires scienter, see SEC v. Shanahan, 646 F.3d 536, 541 (8th Cir. 2011).  All three subsections of Rule 10b-5 require scienter, by contrast, see id., so the district court kept those claims together.

We are not persuaded by any of Quan's challenges to reconciling the verdicts in this way. His assertion that Section 17(a)(1) "plainly does impose liability for false statements, not solely for nonspeech conduct" is beside the point. We evaluate whether verdicts are consistent in light of how the jury was instructed, not retrospective arguments about what the law is (which are really just late arguments about how the jury should have been instructed).[5] See, e.g., Gallick v. Balt. & Ohio R.R., 372 U.S. 108, 120-21 (1963); Guyton v. Tyson Foods, Inc., 767 F.3d 754, 761 & n.4 (8th Cir. 2014); see also Lavoie v. Pac. Press & Shear Co., 975 F.2d 48, 55 (2d Cir. 1992) ("Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions."). And not only did Quan not object to the instruction allowing the jury to reach different conclusions about Section 17(a)(1) and Rule 10b-5, he proposed an instruction saying the same thing: "A material misstatement or omission . . . can be part of a device, scheme, or artifice to defraud, but a single material misstatement or omission, standing alone, is insufficient to establish a device, scheme, or artifice to defraud." That Quan might have had a different reason for proposing his instruction, as he claims, is immaterial. Quan asked the district court to state the law a certain way, and he cannot now successfully complain that the

---

[5]Quan's insistence that the SEC has elsewhere taken the position Section 17(a)(1) imposes liability for false statements or misleading omissions standing alone—reasoning that a lie is a "device" or "artifice" to defraud, see John P. Flannery, Securities Act Release No. 9689, Exchange Act Release No. 73,840, Investment Company Act Release No. 31,374, at 20, 24-25 (Dec. 15, 2014), vacated sub nom. Flannery v. SEC, Nos. 15-1080, 15-1117, 2015 WL 8121647 (1st Cir. Dec. 8, 2015)—is unavailing for the same reason. And because Quan does not challenge the sufficiency of the evidence on appeal, we need not consider the appropriateness of an analogy to the Supreme Court's recent holding that "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." Musacchio v. United States, ___ U.S. ___, ___, 136 S. Ct. 709, 715 (2016).

district court agreed and the jury listened. See, e.g., Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 445 (8th Cir. 1961) ("'A party cannot complain of an alleged error in instructions when the same error is found in its own instructions.'" (quoting Krienke v. Ill. Cent. R.R., 249 F.2d 840, 846 (7th Cir. 1957))).

Quan also protests that the jury "did *in fact* find non-speech 'scheme' liability" because it found violations of Section 17(a)(3), which targets conduct that might also constitute a scheme to defraud, see 15 U.S.C. § 77q(a)(3). Quan overlooks the different mental states required for liability under Section 17(a)'s different subsections. The jury could well have found liability under subsection (3), requiring only negligence, without finding the intent or "severe recklessness" necessary for liability under subsection (1). See Shanahan, 646 F.3d at 541, 543.

Quan's next argument is not actually about inconsistent verdicts at all. He says the jury could not have carefully separated liability for false statements or misleading omissions from liability for fraudulent scheming because it split liability the same way for one of his finance companies, even though the SEC did not present evidence about the finance company making any representations whatsoever. That is, at most, a suggestion the evidence was not sufficient to support the verdict against the finance company. But Quan has not raised that issue on appeal. It is forfeited.

Quan's last challenge is both misguided and misleading. He argues the jury instructions do not in fact support reconciling the verdicts because the district court told the jury the requirements of Section 17(a) were "substantially the same as" Rule 10b-5, with "three exceptions that are relevant," and the exceptions did not include a distinction between scheme liability and false-statement or misleading-omission liability. But of course nothing in the district court's top-level comparison of the two provisions speaks to differences between a *subsection* of Section 17(a), namely (a)(1), and Rule 10b-5 *as a whole*.

### 2. Personal Liability, but Not Aiding-and-Abetting Liability Under Rule 10b-5

Quan also sees inconsistency in the jury finding he personally violated Rule 10b-5, but did not aid and abet SCAF—the fund—in violating the same rule. Quan reasons that he indisputably controlled SCAF and used it as "the vehicle through which [he] sold the securities at issue and committed fraud," so if he committed fraud, SCAF did too, with his knowledge and assistance.

The district court concluded the verdicts could be reconciled because the trial focused on Quan's role at the other companies involved in managing and operating the funds and "the jury may have concluded that they lacked sufficient evidence to determine Quan's role in SCAF LLC or that Quan had aided and abetted a Section 10(b) violation by SCAF LLC." In light of "our duty to harmonize [apparently] inconsistent verdicts" when we can, Anheuser-Busch, 89 F.3d at 1347, and recognizing the district court's firsthand experience with the strategy and focus of the trial, we agree. The funds did not participate in the trial and none of the evidence showed SCAF actively doing anything. Rather, the SEC told the jury the fund was "just a big pool of money" that "goes into a bank account, and . . . sits there." We think it is reasonable to suppose the jury, having already imposed liability on the companies that played an active role in the fraud and on Quan directly for running the whole operation, declined to pile on a finding that Quan was also liable for helping, in some unspecified way, an entity that, as far as the jury heard, did nothing for itself and was little more than a piece of paper.

FDIC v. Munn, 804 F.2d 860 (5th Cir. 1987), which Quan cites as analogous to his case, does not convince us otherwise. In Munn, the Fifth Circuit granted a new trial to a bank that was found to have committed fraud even though the agent whose conduct was the only basis for finding fraud was not. Id. at 867. Here, by contrast, the SEC presented extensive evidence of Quan—the analogue to the bank in Munn—committing fraud through other entities, apart from SCAF. We also note that

-10-

the decision in <u>Munn</u> was driven in part by the fact that the court had separately decided to remand for a new trial on other, closely related claims and worried that limiting the new trial to a subset of the issues would risk confusing the jury, making it unclear exactly what role the jury's conflicting findings played in the outcome.  <u>Id.</u>

### B.      Unanimity About False Statements or Misleading Omissions

The second major issue Quan raises relates to the jury instructions about Section 17(a)(2) and Rule 10b-5(b).  Quan asked the district court to instruct the jury that to find for the SEC under either provision they all needed to agree he made a particular false statement or misleading omission.  The district court refused.  Quan argues that was an abuse of discretion and deprived him of his right to a unanimous jury verdict, so he is entitled to a new trial.[6]

Quan's argument presents the question of whether a particular false statement or misleading omission is the sort of fact about which the jury must be unanimous to find liability—labeled an "element" of a violation—or, instead, is just one of the subsidiary facts by which an element might be proved and about which jurors can disagree.  <u>Cf.</u> <u>Richardson v. United States</u>, 526 U.S. 813, 817 (1999).  Reviewing this

---

[6]Quan also posits that because the jury was not given a specific unanimity instruction, "it may have reached a verdict based on claimed misrepresentations as to which there was no legally sufficient evidence."  That is a non sequitur.  Whether the jury all agreed about at least one misrepresentation has nothing to do with whether the evidence was sufficient to support whichever misrepresentations they found.  Quan's real concern seems to be that the general verdict leaves open the possibility the jury's finding of liability rested on alleged misrepresentations of which—he says—there was not enough evidence.  But that speculative risk does not justify a new trial.  <u>See</u> <u>Griffin v. United States</u>, 502 U.S. 46, 59-60 (1991) (refusing to negate a verdict "'merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient'" (quoting <u>United States v. Townsend</u>, 924 F.2d 1385, 1414 (7th Cir. 1991))).

-11-

question of legal interpretation de novo, see, e.g., Kahle v. Leonard, 563 F.3d 736, 741 (8th Cir. 2009), we agree with the district court that the jury need not agree on a particular false statement or misleading omission for liability under Section 17(a)(2) or Rule 10b-5(b).

We begin with the text. The language of the provisions does not conclusively establish whether a particular false statement or misleading omission is an element, but neither is it entirely neutral. Although worded slightly differently, both provisions refer broadly to "any" false statement or misleading omission. See 15 U.S.C. § 77q(a)(2); 17 C.F.R. § 240.10b-5(b). On its face, that formulation would be satisfied if the jury agreed only on the general proposition that a defendant made a false statement or misleading omission, regardless of whether they disagreed about which one. Cf. United States v. Verrecchia, 196 F.3d 294, 299 (1st Cir. 1999) (considering whether jurors must agree about which particular gun a felon possessed to find guilt under 18 U.S.C. § 922(g)(1)).

The wider statutory and regulatory context supports that interpretation. "The 'evil at which [the securities laws are] directed is the fraud in the sale [or purchase] of securities.'" Little v. United States, 331 F.2d 287, 292 (8th Cir. 1964) (emphasis omitted) (quoting United States v. Cashin, 281 F.2d 669, 674 (2d Cir. 1960)) (going on to explain "a scheme to defraud, in relation to a sale of securities, . . . is the gist of the crime denounced by the Congress in Section 17(a)"). To that end, Section 17(a) and Rule 10b-5 impose liability not only for false statements and misleading omissions, but also for two other broad and potentially overlapping categories of fraud. See 15 U.S.C. § 77q(a)(1), (3); 17 C.F.R. § 240.10b-5(a), (c). Their purpose is to prevent the distortion or perversion of interstate securities markets by fraud, not to target specific bits of misinformation, further suggesting they are not primarily concerned with the identity of particular misrepresentations.

Quan attempts to counter this reasoning by citing the Eighth Circuit's model jury instruction on perjury, which says the jury must all agree about at least one false statement. See Judicial Comm. on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (2014 ed.) § 6.18.1621 note on use 1.[7] As Quan points out, the perjury statute, like Section 17(a)(2) and Rule 10b-5(b), refers to "*any* material matter which [the speaker] does not believe to be true." 18 U.S.C. § 1621 (emphasis added). Of course, a model jury instruction is not controlling law and can be incorrect, see, e.g., United States v. Evans, 272 F.3d 1069, 1081 (8th Cir. 2001), and Quan does not cite any decisions of this court to support his position. In any event, we see a clear distinction between the securities laws' focus on fraud in general and perjury's much more direct concern with the content and falsity of particular statements, which distinction justifies any discrepancy.

In reaching our conclusion on this issue, we give little weight to United States v. Rice, 699 F.3d 1043 (8th Cir. 2012), or other cases dealing with mail and wire fraud, cases on which the SEC relies heavily. Though the relevant provisions share some language and the general subject matter of fraud, the differences between the laws—the mail- and wire-fraud statutes by their terms impose liability on the use of the mail or wires to further a "scheme or artifice to defraud," see 18 U.S.C. §§ 1341, 1343, while Section 17(a)(2) and Rule 10b-5(b) are framed in terms of false statements or misleading omissions, see 15 U.S.C. § 77q(a)(2); 17 C.F.R. § 240.10b-

_____

[7]The model jury instruction on securities fraud does not require unanimity on a particular false statement or misleading omission. See Judicial Comm. on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (2014 ed.) § 6.15.77q(a) and 78j(b) note on use 8 (cross-referencing the notes to the model instructions on mail fraud, section 6.18.1341). The accompanying notes do suggest an instruction on unanimity might be required "if the means used to commit an offense are deemed an element of the crime," but do not provide guidance on determining what counts as an element. Id. § 6.18.1341 note on use 2.

5(b)—are significant enough that, in our opinion, <u>Rice</u> does not provide much guidance in this case.

On the other hand, neither are we swayed by Quan's claim that fairness favors requiring unanimity. The conduct prohibited by Section 17(a)(2) and Rule 10b-5(b) is sufficiently narrow and well-defined that allowing jurors to reach different conclusions about particular false statements or misleading omissions does not raise concerns about "wide disagreement . . . about just what the defendant did, or did not, do" or findings of liability based on a defendant's "bad reputation," rather than specific facts. <u>Richardson</u>, 526 U.S. at 819. And Quan's assertion that a heightened unanimity requirement would reduce the risk of a defendant facing potentially catastrophic liability—which, naturally, is true of any number of laws—does not implicate the sort of "fairness" relevant to this analysis. <u>See</u> <u>id.</u>

Finally, we note some of the decisions Quan cites address duplicity, or the improper grouping of multiple separate offenses in a single count of an indictment. <u>See</u>, <u>e.g.</u>, <u>United States v. Yielding</u>, 657 F.3d 688, 702-03 (8th Cir. 2011); <u>United States v. Holley</u>, 942 F.2d 916, 927-29 (5th Cir. 1991). Though duplicity in some ways resembles the concern Quan raises, in that both present questions about what exactly a jury must agree on, it is a separate, conceptually distinct issue. Most simply, duplicity deals with multiple violations, whereas the issue addressed in this case deals with multiple ways of committing a single violation. <u>See</u> <u>United States v. Stegmeier</u>, 701 F.3d 574, 581 (8th Cir. 2012) (distinguishing between duplicity and the possibility of jurors disagreeing about an element of a single charged offense); <u>United States v. Newell</u>, 658 F.3d 1, 20, 22 n.21 (1st Cir. 2011) (describing the distinction as being "between unanimity as to a crime's elements and unanimity as to a crime's instances"). Because Quan's argument throughout this appeal has consistently been that an instruction was required because "[a] false or misleading statement is an element of the charged violation," not because individual counts of the SEC's

complaint alleged multiple separate violations,[8] we consider the duplicity case law inapposite and do not address the issue further.

### C. Disgorgement

Quan's last argument is that the district court could not order disgorgement because it was only authorized to grant equitable relief, see 15 U.S.C. § 78u(d)(5), and disgorgement—at least when, as here, not limited to specific assets traced back to a violation—is a legal remedy. Quan raises a question of law, so our review is de novo. See Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1006 (8th Cir. 2004).

Quan's position finds no support in our precedent or elsewhere in the extensive body of case law on securities fraud. Cf. SEC v. Ridenour, 913 F.2d 515, 517 (8th Cir. 1990) ("An individual found liable for fraudulently trading federal securities may properly be ordered to disgorge any ill-gotten profits."). To the contrary, "the Federal Reporter is replete with instances in which judges . . . deeply familiar with equity practice have permitted the SEC to obtain disgorgement without any mention of tracing." FTC v. Bronson Partners, LLC, 654 F.3d 359, 374 (2d Cir. 2011); see also, e.g., SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 95 (2d Cir. 1978) (Friendly, J.). Quan insists the Supreme Court implicitly overruled this longstanding consensus by holding that a provision allowing only equitable relief did not authorize a claim for "restitution" because it sought, "in essence, to impose personal liability

---

[8]The only suggestion of a duplicity-based challenge comes in Quan's reply brief, but even there Quan treats it as part of his argument about the elements of a violation and fails to develop it separately. See, e.g., United States v. Williams, 796 F.3d 951, 958 n.4 (8th Cir. 2015) (declining to consider an argument suggested in a party's reply brief but not properly developed and adding "as a general rule we do not entertain arguments that are first raised in a reply brief"), petition for cert. filed, Nov. 4, 2015. Nor does Quan provide any support for extending the doctrine from the exclusively criminal cases he cites to the civil context.

. . . for a contractual obligation to pay money," which was not a remedy "typically available in equity." Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 212 (2002).

But Quan's case is not about restitution in the same sense, and the SEC seeking disgorgement is not analogous to a private plaintiff suing for money it is owed under a contract. See Commonwealth Chem., 574 F.2d at 95 ("[T]he court is not awarding damages to which plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment."). Indeed, disgorged funds are paid not to the SEC, but to the district court, which has discretion over how to disburse them. See SEC v. Cavanagh, 445 F.3d 105, 117 (2d Cir. 2006). Quan cites no authority suggesting a lawsuit by an organ of the government acting in the public interest to enforce specific statutory and regulatory provisions and prevent violators from keeping their ill-gotten gains resembles a traditional suit at law. Cf. id. at 116-20 ("Because chancery courts possessed the power to order equitable disgorgement in the eighteenth century, we hold that contemporary federal courts are vested with the same authority."). In short, Quan utterly fails to dissuade us from affirming the disgorgement award the district court ordered here as a permissible equitable remedy.

## III.   CONCLUSION

The jury's findings were reconcilable, the district court did not need to tell the jury they could only find Quan liable if they agreed on a particular false statement or misleading omission, and the district court was authorized to order disgorgement. The judgment is affirmed, and we remand for further proceedings.

_____