# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1072

_____

United States Securities and Exchange Commission

*Plaintiff - Appellee*

v.

Marlon Quan; Acorn Capital Group, LLC; Stewardship Investment Advisors, LLC; Stewardship Credit Arbitrage Fund, LLC; Putnam Green, LLC; Livingston Acres, LLC; ACG II, LLC; Florence Quan

*Defendant*s

Nigel Chatterjee; DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main; Sovereign Bank

*Intervenor*s

Topwater Exclusive Fund III, LLC; Freestone Low Volatility Partners, LP; Freestone Low Volatility Qualified Partners, LP

*Intervenors - Appellants*

Gary Hansen

*Receiver - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 9, 2017
Filed: August 30, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This is the second appeal in an enforcement action brought by the Securities and Exchange Commission (SEC) against Marlon Quan and entities he controlled, including the hedge fund Stewardship Credit Arbitrage Fund, LLC (SCAF).[1] SCAF was heavily invested in loans to entities controlled by Thomas Petters. Those investments suffered catastrophic losses when the Ponzi scheme supporting Petters' businesses collapsed.

In the first appeal, SEC v. Quan, 817 F.3d 583 (8th Cir. 2016), we affirmed a jury verdict against Quan and certain entities he controlled—but not SCAF—for securities law violations based on false statements and misleading omissions made to hedge fund investors. Meanwhile, the district court[2] placed SCAF's remaining assets in receivership, approved the receiver's stipulation as to SCAF's liability, and approved a plan to distribute SCAF's assets to its investors and creditors. Three investors in SCAF—Topwater Exclusive Fund III, LLC, Freestone Low Volatility Partners, LP, and Freestone Low Volatility Qualified Partners, LP (collectively, Appellants)—appeal orders entered by the district court pertaining to the receivership,

_____

[1]Unless otherwise noted, the term "SCAF" includes SCAF's wholly-owned subsidiaries, Livingston Acres, LLC (Livingston) and Putnam Green, LLC (Putnam Green).

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

the entry of judgment against SCAF, and the pro rata distribution of SCAF's assets to investors. Because Appellants have identified no reversible error, we affirm.

## I. Background

In March 2011, the SEC commenced an enforcement action against Marlon Quan and two investment management entities that he controlled: Stewardship Investment Advisors (SIA) and Acorn Capital Group, LLC (Acorn). The complaint alleged that Quan and the entities violated securities laws by: (1) fraudulently selling interests in two hedge funds—the onshore SCAF and the offshore Stewardship Credit Arbitrage Fund, Ltd.—through marketing materials that included materially false or misleading representations about anti-fraud measures that would be used to protect the investments; and (2) concealing defaults on the hedge funds' core investments beginning in December 2007, when those promissory notes issued by Thomas J. Petters (Petters Notes) began failing as a result of a Ponzi scheme.

After the Ponzi scheme collapsed, the Petters businesses' assets were placed in receivership and several Petters entities filed for bankruptcy. Certain Quan entities and their creditors reached a settlement with the Petters businesses' bankruptcy and receivership estates. On motion by the SEC, the district court froze the share of the assets from this settlement that were apportioned to SCAF. Ultimately, these frozen assets and additional frozen SCAF assets recovered from other bankruptcies—totaling approximately $18 million—were deposited with the court.[3]

In April 2012, the district court appointed a receiver, Gary Hansen, to manage SCAF and its frozen funds. The receivership order gave the receiver the power to "take any action which could be taken by the officers, directors, partners, members,

_____

[3]Of the approximately $18 million deposited with the court, roughly $17 million was recovered from SCAF's investments in the Petters Notes.

-3-

shareholders, and trustees" of SCAF; "resist and defend all suits, actions, claims and demands which may now be pending or which may be brought or asserted against" SCAF; and take any "necessary and appropriate" action to "prevent the dissipation . . . of any funds or assets or for the preservation of any such funds and assets of" SCAF. After the entry of an order for disgorgement, the receiver was responsible for proposing to the court a claims and distribution process for the receivership assets.

Shortly thereafter, the district court granted the SEC's unopposed motion for leave to amend the complaint, adding SCAF as a defendant. SCAF was organized as a limited liability company controlled by its managing member SIA, which in turn was controlled by Quan. The First Amended Complaint stated claims against SCAF for violations of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a)(c), as well as Sections 17(a)(1), (2)[4] & (3) of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77q(a)(1)–(3).

Appellants, who are preferred investors in SCAF, moved to intervene in the action and to modify the receivership order to permit an immediate claim and distribution process in accordance with SCAF's operating documents. The district court granted the motion to intervene, but denied the motion to modify the receivership. The court concluded that SCAF could be found liable for fraud, and should that occur, the court could order disgorgement of the receivership assets and distribute those funds equitably, rather than adhering to SCAF's operating documents.

On June 6, 2013, the receiver moved for court approval of a stipulation (First Stipulation) signed by all parties except for the intervenors. The First Stipulation agreed that SCAF would not be required to respond to the First Amended Complaint,

---

[4]This claim was brought only against SCAF, and not its subsidiaries Livingston and Putnam Green.

to file summary judgment briefs, or to participate in the upcoming trial. According to the stipulation, the receiver had adjudged that an active defense of the matter would be costly and would deplete SCAF's assets, and that "determination of the SEC's claims against Quan will as a practical matter govern the determination of the SEC's claims against SCAF." The First Stipulation provided that, after resolution of the claims against Quan, "SCAF and the SEC shall enter into a further stipulation applying that judgment to the claims against SCAF and requesting the Court to enter judgment as to SCAF." Over Appellants' objection, the district court approved the First Stipulation, finding it was within the receiver's authority, properly preserved SCAF's assets, and did not commit the receiver to a final settlement disposition.

The district court held a jury trial on the claims against Quan and certain entities he controlled, including SIA and Acorn, but not SCAF. As relevant here, the jury found Quan and SIA liable for violations of Section 10(b) of the Securities Act and Sections 17(a)(2) and (3) of the Exchange Act. The jury did not find Quan liable for personally aiding and abetting SCAF's violations of Section 10(b) and Rule 10b-5 thereunder. The court entered final judgment against the trial defendants in the amount of approximately $95 million.

The trial defendants appealed, challenging, among other things, the consistency of the verdict. The trial defendants argued that the jury, as a matter of internal inconsistency, could not find that Quan "personally violated Rule 10b-5, but did not aid and abet SCAF . . . in violating the same rule" because "he indisputably controlled SCAF and used it as 'the vehicle through which [he] sold the securities at issue and committed fraud.'" Quan, 817 F.3d at 591 (alteration in orignal). We found the jury's verdict reconcilable because SCAF did not participate in the trial and "none of the evidence showed SCAF actively doing anything"—rather, the "trial focused on Quan's role at the other companies." Id. Thus, "the jury may have concluded that they lacked sufficient evidence to determine Quan's role in SCAF" and "declined to

pile on a finding that Quan was also liable for helping [SCAF], in some unspecified way." Id.

While the appeal was pending, the receiver and the SEC moved for the district court to approve a Second Stipulation. In that stipulation, SCAF conceded that its conduct violated the securities laws, consented to the entry of judgment against it, and agreed that its assets would be disgorged. Specifically, SCAF admitted it made material misrepresentations in its Private Placement Memoranda, PowerPoint presentations, and newsletters by falsely promising to prospective investors in the Petters Notes that SCAF would use a lockbox account, conduct full due diligence of the loans, and hire an accounting firm to audit intermediaries. The stipulation also admitted that SCAF defrauded its investors by concealing the mounting defaults in the Petters Notes. Over Appellants' objections, the district court approved the Second Stipulation, entered judgment against SCAF, and ordered disgorgement. It concluded that the jury's finding of no liability on the aiding and abetting claim against Quan "does not compel the conclusion that the jury determined that SCAF did not commit securities fraud." It further found the Second Stipulation was within the receiver's authority and was a reasonable and prudent exercise of that authority.

The district court also granted the receiver's motion—supported by the SEC, but contested by Appellants—for approval of a distribution plan for the receivership's assets, which at that point totaled approximately $18.9 million. Under the distribution plan, SCAF's two secured creditors, DZ Bank and Soveriegn Bank, would receive 40 percent of the fund. The remaining 60 percent—approximately $11.4 million—would be distributed pro rata to SCAF's investors. The district court found the plan was fair and equitable and overruled Appellants' objection that the plan did not account for the class of investor: Both Class P preferred investors, like Appellants, and Class A non-preferred investors would share equally. Finally, the district court ordered, pursuant to the receiver's request, that if a claimant unsuccessfully appeals the distribution plan, the receiver's legal fees and costs in

-6-

responding to the appeal "shall be deducted from the challenging claimant's distribution."

Appellants challenge the district court's approval of the First and Second Stipulations, approval of the pro rata distribution of assets to SCAF's investors, and order that Appellants pay the receiver's legal fees and expenses if they are unsuccessful in this appeal.

## II. Discussion

### A. First Stipulation

Appellants argue that the district court erred in approving the First Stipulation because the receiver was under two conflicts of interest. We review the district court's oversight of the receiver and its approval of the stipulation for abuse of discretion. See SEC v. Ark. Loan & Thrift Corp., 427 F.2d 1171, 1172 (8th Cir. 1970) (per curiam).

First, Appellants argue that the receiver was under an "inherent conflict of interest" because he and the SEC wanted SCAF to be found liable for securities fraud, as then they would "gain much greater authority to recommend and implement a Distribution Plan of SCAF's assets" that ignored the contractual rights of preferred investors. Appellants cite no authority for their contention that the receiver's ability to stipulate to liability conflicts with his ability to propose a distribution plan. According to the receivership order, it was within the receiver's authority to defend or settle any lawsuits as well as to submit a recommended distribution plan, and Appellants never challenged these provisions of the receivership order. There is no basis to conclude that the district court abused its discretion in permitting the receiver both to determine SCAF's liability and to propose a distribution plan, which was subject to the SEC's potential counter-proposal and the review and approval of the

district court. See SEC v. Loving Spirit Found. Inc., 392 F.3d 486, 490 (D.C. Cir. 2004) ("A receiver's authority . . . is defined solely by the order of the appointing court, which may provide for the administration of the receivership in any way it sees appropriate." (internal quotations omitted)).

Second, Appellants argue that the district court should not have approved the First Stipulation—which they contend tied SCAF's liability to Quan and SIA's—because SCAF was defrauded by Quan and SIA and their interests are "diametrically opposed." Instead, according to Appellants, the receiver should have had SCAF take an active role in the litigation and should not have relied on Quan and SIA's counsel to protect its interests. The district court approved the First Stipulation because it "prevented the unnecessary dissipation of receivership assets" and allowed the receiver to benefit from ultimate resolution of the claims against Quan without "preclud[ing] the Receiver from raising future defenses." We conclude that the district court did not abuse its discretion in approving the First Stipulation. The receiver acted within his broad authority in determining that a separate defense was unwarranted because there was sufficient overlap between SCAF and Quan and SIA's defenses, and because it would have required substantial litigation expenditures from SCAF's limited assets, which would have harmed all of SCAF's investors, including Appellants. See SEC v. Vescor Capital Corp., 599 F.3d 1189, 1194 (10th Cir. 2010) (affirming the district court's administration of the receivership because it "properly focused on safeguarding the Vescor investors' assets as a whole").

Accordingly, Appellants have identified no error in the district court's approval of the First Stipulation, which was within the court's broad discretionary power. See SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.").

**B. Second Stipulation**

Appellants also challenge the Second Stipulation. They argue that the First Stipulation—which stated that the SEC and SCAF "shall enter into a further stipulation applying [the final determination of the claims against Quan] to the claims against SCAF"—interpreted in conjunction with the jury's verdict prevented the district court from approving the Second Stipulation, which consented to SCAF's liability. In particular, Appellants argue that the jury's verdict that Quan was not liable for aiding and abetting SCAF's violation of Section 10(b) of the Exchange Act necessarily means that the jury concluded that SCAF did not violate any securities laws. We review the meaning and effect of the stipulations de novo, see Braxton v. United States, 500 U.S. 344, 350 (1991), but we review the district court's approval of the Second Stipulation for abuse of discretion, see Ritchie Capital Mgmt., LLC v. Jeffries, 653 F.3d 755, 760 (8th Cir. 2011).

The jury's verdict on the aiding and abetting claim does not preclude the conclusion that SCAF was liable for securities fraud violations. According to the jury instructions in the Quan trial, to return a guilty verdict on the aiding and abetting claim, the jury had to find that: (1) SCAF violated Section 10(b); (2) Quan had knowledge that SCAF was violating Section 10(b); and (3) Quan provided substantial assistance to SCAF in its violation of Section 10(b). The jury could have found Quan not liable on this claim without reaching any conclusions about SCAF. This is because, as we stated in the prior appeal, SCAF "did not participate in the trial and none of the evidence showed SCAF actively doing anything." Quan, 817 F.3d at 591. The jury also could have found that the aiding and abetting elements were insufficiently proven. It could have concluded, for example, that it "lacked sufficient evidence to determine Quan's role" in or assistance in support of SCAF, "an entity that, as far as the jury heard, did nothing for itself and was little more than a piece of paper." Id. For these same reasons, we reject Appellants' argument that SCAF's liability, and thus the Second Stipulation, is barred by issue preclusion. See S.E.L.

Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir. 1987) ("If the jury could have premised its verdict on one or more of several issues, then collateral estoppel does not act as a bar . . . .").

Appellants also argue that the district court erred in approving the Second Stipulation because SCAF—a hedge fund and limited liability company owned by its investors and wholly controlled by Quan and SIA—cannot be liable for misrepresentations made to investors.[5]  Appellants cite no authority for this proposition, which appears to be contrary to our case law.  See, e.g., Doud v. Toy Box Dev. Co., 798 F.3d 709, 714 (8th Cir. 2015) (affirming summary judgment against a limited liability company for Section 10(b) violations based on misrepresentations in the company's offering documents).  To the extent that this argument presents a defense that the receiver could have raised on behalf of SCAF, the district court acted within its broad discretion in concluding that the receiver's decision to stipulate to SCAF's liability without raising any defenses was a "reasonable and prudent exercise of the receiver's authority."  The court found that the receiver "has analyzed the results of the [Quan] trial," "has made an assessment of the risks versus the costs of subjecting [SCAF] to a trial on the merits," and "has determined that a trial on the claims against [SCAF] would likely be decided against [it] and that defending against the claims would dissipate Receivership Assets that already fall far short of the claims against the Receivership."  We find no abuse of discretion in the court's approval of the Second Stipulation.

---

[5]Citing Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011), Appellants argue that SCAF cannot be liable under Section 10(b) because it did not "make" an untrue statement of material fact.  Because this argument was not raised before the district court, we do not address it here.  See St. Paul Fire & Marine Ins. v. Compaq Comput. Corp., 539 F.3d 809, 824 (8th Cir. 2008).

## C. Pro Rata Distribution

After stipulating to an order for disgorgement of SCAF's assets, the receiver proposed to the district court a distribution plan for those assets, which was supported by the SEC. The proposed plan distributed 40 percent of the $18.9 million fund to SCAF's secured creditors, and the remaining 60 percent to the investors pro rata. Appellants objected to the pro rata distribution, arguing that as Class P preferred investors, they should be favored over Class A investors because they had a contractual liquidation preference and had opted to purchase more conservative shares. The district court rejected Appellants' objection, concluding that the distinction between Class A and P investors was immaterial because "investor losses were not caused by market risk," but rather "by Defendants' false promises about anti-fraud protections that were never implemented—a risk that no investor knowingly assumed." Because both classes were "equally defrauded" when they invested in SCAF, the district court concluded they are "entitled to share equally" in the fund.[6]

On appeal, Appellants raise the same arguments, explaining that Class P investors sought minimum risk in the form of a guaranteed low rate of return, in exchange for a liquidation preference in the event of dissolution, whereas Class A investors chose riskier and more variable investments. Appellants ask us to vacate the portion of the distribution plan allocated to investors and remand with the direction that the Class P liquidation preference be honored.

We review the district court's selection of a distribution plan for the receivership assets for abuse of discretion. SEC v. Wealth Mgmt. LLC, 628 F.3d 323,

---

[6]Appellants argue the district court's reasoning has been criticized in SEC v. Spongetech Delivery Systems, Inc., 98 F. Supp. 3d 530, 549 (E.D.N.Y. 2015). That case addressed only the district court's discussion of disgorgement and distribution as it related to secured creditors—a portion of the plan that Appellants do not appeal.

332–33 (7th Cir. 2010); SEC v. Credit Bancorp, Ltd., 290 F.3d 80, 87 (2d Cir. 2002). The district court has "broad equitable power" in approving a distribution plan, "so appellate scrutiny is narrow." Wealth Mgmt., 628 F.3d at 332. "[T]he primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." Id. The court is not required to distribute the assets in accordance with the contractual rights of the parties. See Broadbent v. Advantage Software, Inc., 415 F. App'x 73, 78–79 (10th Cir. 2011); Credit Bancorp, 290 F.3d at 89–90.

Courts have "routinely endorsed" the pro rata distribution of assets to investors as the most fair and equitable approach in fraud cases. Wealth Mgmt., 628 F.3d at 333; accord SEC v. Infinity Grp. Co., 226 F. App'x 217, 218 (3d Cir. 2007); Credit Bancorp, 290 F.3d at 88–89 ("Courts have favored *pro rata* distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders."). We find no abuse of discretion in the district court's adoption of pro rata distribution as applied to SCAF's investors.

Class A and P investors were fraudulently induced into investing in SCAF based on the same misrepresentations, and both unwittingly had the majority of their investments funneled into Petters' Ponzi scheme, making most of their investments and thus most of their returns essentially fictitious. Both classes of investors "were similarly situated in relationship to the fraud, in relationship to the losses, in relationship to the fraudsters, and in relationship to the nature of their investments, so that a . . . pro rata distribution is equitable." Commodity Futures Trading Comm'n v. Walsh, 712 F.3d 735, 748 (2d Cir. 2013) (quotations and emphasis omitted). Because no investor knowingly takes the risk that she will be defrauded, the distribution plan need not take into account the fact that Class P investors initially purchased less risky investments. See id. at 751 ("[M]ere choices of different investment vehicles did not mean that the two groups of defrauded investors . . . were meaningfully dissimilar, given, *inter alia*, that both . . . lost money because they were

defrauded by the same individual who stole their money." (quotations and alterations omitted)). Finally, it was not an abuse of discretion for the district court to refuse to enforce the liquidation preference, which was created by the defrauder and provided in the very same documents that contained fraudulent misrepresentations. See id. at 749 ("[A] receiver devising a distribution plan is not required to apportion assets in conformity with misrepresentations and arbitrary allocations that were made by the defrauder, 'otherwise, the whim of the defrauder would . . . control[] the process that is supposed to unwind the fraud.'" (second and third alterations in original) (quoting In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 238 n.7 (2d Cir. 2011))).

Appellants cite no case law requiring a district court to favor one class of investors over another in an equity receivership compensating fraud victims.[7] We find no basis to conclude that the district court abused its discretion in applying a pro rata distribution to all investors.

## D. Legal Fees and Expenses

Finally, Appellants argue that the district court erred in ordering them to bear the receiver's legal fees and expenses if they are unsuccessful in this appeal. Because Appellants did not object to the shifting of these fees and expenses before the district court, they have waived this argument. See Joseph v. Allen, 712 F.3d 1222, 1226

---

[7]Appellants cite cases where appellate courts, reviewing for abuse of discretion, affirmed a district court's approval of non-pro rata distribution plans, but these courts did not require such an approach. See, e.g., SEC v. Enter. Tr. Co., 559 F.3d 649, 652 (7th Cir. 2009) (affirming approval of plan that favored holders of custodial accounts over managed accounts because custodial holders had not authorized defendants to manage their money and they had "no legitimate beef"); SEC v. Wang, 944 F.2d 80, 86 (2d Cir. 1991) (approving plan that favored investors who assumed the greatest risk of loss).

(8th Cir. 2013) (failing to oppose an issue before the district court results in waiver of the issue on appeal).

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____